IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| RIDAH BIN SALEH AL YAZIDI, | ) |
| SAMI AL HAJJ, <br>     as Next Friend of Mr. al Yazidi, | ) |
| *Petitioners/Plaintiffs*, <br> v. | ) CIVIL ACTION NO. _____ |
| GEORGE W. BUSH, *et al.*, | ) |
| *Respondents*. | ) |

**MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION REQUIRING RESPONDENTS TO PROVIDE COUNSEL FOR PETITIONER AND THE COURT WITH THIRTY DAYS' ADVANCE NOTICE OF INTENDED REMOVAL OF PETITIONER FROM GUANTANAMO**

Petitioner respectfully moves this Court to grant his counsel 30 days' notice before transferring him from Guantanamo Bay Naval Base in Cuba. Recent press accounts about the United States Government's desire to close the Guantanamo Bay facility coupled with reports that former Guantanamo prisoners are abused and tortured upon transfer lead Petitioner to reasonably believe that he may be immediately transferred to a location where he would be tortured, abused, and held without due process of law. The requested notice will protect Petitioner al Yazidi and allow this Court to preserve its jurisdiction until the Supreme Court issues an opinion in *Boumediene v. Bush*, 476 F.3d 981 (D.C. Cir. 2007), *cert. granted*, 75 U.S.L.W. 3705 (U.S. Jun. 29, 2007).

I.  **30 Days' Notice of Transfer is Appropriate to Protect Petitioner Against Rendition and Torture**

Petitioner al Yazidi requests that his counsel be given thirty days' advance notice of any transfer to provide his counsel with an opportunity to contest his removal from Guantanamo and

to preserve the jurisdiction of this Court in this matter. On information and belief, Respondents have contemplated or are contemplating removing Petitioner to foreign territories where he could be tortured or held indefinitely without due process of law. The requested relief will allow Petitioner al Yazidi to seek relief from this Court if necessary and allow this Court to preserve its jurisdiction pending a Supreme Court decision in *Boumediene*.

A.  **Petitioner al Yazidi Is in Danger of Being Transferred to His Home Country or an Unknown Location Where He Faces Possible Torture and Indefinite Detention Without Due Process of Law**

Petitioner al Yazidi is a Tunisian national who has been imprisoned in Guantanamo for approximately five years. Respondents may at any time transfer Petitioner al Yazidi back to Tunisia or to a third country where he may be detained indefinitely, tortured, or even killed.

For years, the press has reported on Pentagon plans to transfer more than half of the detainees at Guantanamo to countries with abominable human rights records, such as Saudi Arabia, Afghanistan, Tunisia, and Yemen. *See* Douglas Jehl, *Pentagon Seeks to Transfer More Detainees from Base in Cuba*, New York Times, March 11, 2005. The government now appears to be executing that plan. Recent press reports regarding mounting internal pressures to close the detention facilities at Guantanamo place Petitioner al Yazidi in grave danger of being moved to his home country or elsewhere. *See* Associated Press, *Democrats Plan to Close Guantanamo*, June 29, 2007 ("The White House says Bush has already decided to close the U.S. prison in Cuba and transfer more than 370 terrorism suspects elsewhere."). Within the last six months, dozens of detainees were transferred to foreign governments, including Saudi Arabia, Afghanistan, Tunisia, and Yemen, among others. *See* Press Releases, Dep't of Defense, Detainee Transfer Announced (June 19, 2007; July 16, 2007; Sept. 6, 2007; Sept. 28, 2007; Sept. 29, 2007; Nov. 4, 2007; Nov. 11, 2007, Dec. 12, 2007).In its December 12, 2007 press release, the United States Department

2

of Defense stated that "more than 70 detainees at Guantanamo are eligible for transfer or release," which amounts to almost a fourth of the prison population. *Id.* On information and belief, there is a substantial likelihood that Petitioner al Yazidi is among the detainees slated for transfer.

If Petitioner al Yazidi is transferred into the custody of the Tunisian government, he will likely face continued illegal detention without due process of law, torture, and may be summarily executed. The torture practices of Tunisian security forces are well-documented by the U.S. State Department. *See* U.S. State Department Bureau of Democracy, Human Rights, and Labor, Country Reports on Human Rights Practices— 2006: Tunisia, March 6, 2007, at § 1, *available at* http://www.state.gov/g/drl/rls/hrrpt/2006/78864.htm. These practices include "sleep deprivation; electric shock; submersion of the head in water; beatings with hands, sticks, and police batons, suspensions, sometimes manacled, from cell doors and rods resulting in loss of consciousness, and cigarette burns." *Id.*

Two detainees recently transferred from Guantanamo to Tunisia reported suffering abuse at the hands of Tunisian security forces. Former detainee Abdullah al-Hajji Ben Amor was immediately taken to an interrogation center upon arriving in Tunisia around June 17, 2007. There, he was kept awake, "slapped, threatened with the rape of his wife and daughters, and coerced into signing a something he could not read." *See* Human Rights Watch, Ill-Fated Homecomings: A Tunisian Case Study of Guantanamo Repatriations, vol. 19, no. 4(E), September 2007, at 23. al-Hajji claims he was then held for six weeks in solitary confinement. *Id.* Similarly, former detainee Lotfi Lagha was subjected to solitary confinement and held in pretrial detention for six weeks without access to counsel. *Id.*

Indeed, Judge Gladys Kessler recently enjoined the government from transferring a Guantanamo detainee to Tunisia because of credible concerns that he would face a "serious threat of torture." Mem. Order, Rafiq Bin Bashir Bin Jallul Alhami et al. v. George Bush, et al., No. 05-359 (D.C. Dist., Oct. 2, 2007).[1]

Petitioner al Yazidi also has reason to fear that he will be transferred to a third country where he will be tortured or detained indefinitely without due process of law. Upon information and belief, the United States has secretly removed detainees and others suspected of terrorist activities to other countries to be interrogated or detained without complying with extradition or other legal processes. This practice, known as "rendition" or "extraordinary rendition," is used to facilitate interrogation by subjecting detainees to torture.

Reports by reputable news organizations such as the *Washington Post* have documented the U.S. governments' practice of transferring detainees into the custody of foreign governments that employ inhumane interrogation techniques. According to the *Washington Post*,

> Since September 11, the U.S. government has secretly transported dozens of people suspected of links to terrorists to countries other than the United States, bypassing extradition procedures and legal formalities, according to Western diplomats and intelligence sources. The suspects have been taken to countries . . . whose intelligence services have close ties to the CIA and where they can be subjected to interrogation tactics—including torture and threats to families—that are illegal in the United States, the sources said. In some cases, U.S. intelligence analysts remain closely involved in the interrogation, the sources said.

Rajiv Chanrasekaran & Peter Finn, *U.S. Behind Secret Transfer of Terror Suspects*, Wash. Post, Mar. 11, 2002, at A1. Detainees may be brought to countries that are known to practice torture.

---

[1] The petitioner affected by Judge Kessler's order had been convicted and sentenced to twenty years imprisonment for violating the Tunisian Patriot Act. His conviction was purportedly based solely on the undisclosed evidence supporting his detention in Guantanamo. Mem. Order, Rafiq Bin Bashir Bin Jallul Alhami et al. v. George Bush, et al., No. 05-359 (D.C. Dist., Oct. 2, 2007). Given the Tunisian government's practice of convicting its citizens in absentia, Petitioner Nasseri has reason to fear comparable treatment.

*See, e.g.*, Megan K. Stack & Bob Drogin, *Detainee Says U.S. Handed Him Over for Torture*, L.A. Times, Jan. 13, 2005, at A1.

### B. Petitioner al Yazidi Is Entitled to a Preliminary Injunction Granting Counsel and the Court 30 Days' Notice of Impending Transfer From Guantanamo

Petitioner al Yazidi's request meets the most fundamental purpose of preliminary injunctive relief: "to preserve the status quo between the parties pending a final determination of the merits of the action." 13 Moore's Federal Practice 3d, § 65.20 (2004). Under the All Writs Act, 28 U.S.C. § 1651(a), this Court has the inherent power "to issue injunctions to protect its jurisdiction." *Envtl. Def. Fund v. EPA*, 485 F.2d 780, 784 n.2 (D.C. Cir. 1973).

Each of the four factors to be weighed in awarding preliminary injunctive relief favors the Petitioner's request for 30 days' notice of transfer: (1) Petitioner al Yazidi will suffer irreparable harm if the injunction is denied; (2) no harm will be suffered by Respondents if the injunction is granted; (3) Petitioner al Yazidi is likely to succeed on the merits of his claims; and (4) there is a clear public interest in preventing the United States Government from rendering individuals to foreign countries for illegal detention and torture. *See Serono Labs., Inc. v. Shalala*, 158 F.3d 1313, 1317-18 (D.C. Cir. 1998). These factors are balanced on a sliding scale; "if the arguments for one factor are particularly strong, an injunction may issue[.]" *Id.*

Petitioner al Yazidi's request should be granted because he faces a clear and present threat of severe and irreparable harm if transferred. He faces prospective harm of two types: personal bodily harm and legal harm. First, Petitioner al Yazidi may suffer immeasurable and irreparable personal bodily harm—from detention to torture to possible death—at the hands of a foreign government. Second, Petitioner al Yazidi will be harmed legally if transferred, as transfer to another country circumvents his right to adjudicate the legality of his detention in this Court. Transfer would "eliminate any opportunity for [Petitioner] to ever obtain a fair adjudica-

tion of [his] 'fundamental right to test the legitimacy of [his] executive detention.'" Mem. Opinion [Granting Motion for 30 Days' Notice], Civil Action No. 04-1254 (HHK), Doc. No. 11 (D.C. Dist., June 3, 2005). The severity of the harm Petitioner al Yazidi would suffer if transferred weighs heavily in favor of granting his request for 30-days notice.

By contrast, Respondents, who have already held Petitioner al Yazidi for several years, need only to provide counsel and the Court with adequate notice of any intended removal of Petitioner al Yazidi from Guantanamo. This request does not place a substantial burden on Respondents, and Respondents can suffer no conceivable harm from complying with this request.

In addition, Petitioner al Yazidi will likely succeed on the merits of his habeas claim. Petitioner has properly invoked the jurisdiction of this Court. *See Rasul v. Bush*, 124 S. Ct. 2686, 2698 (2004). The Supreme Court has already ruled that detainees have stated actionable claims under the Due Process Clause and the Geneva Conventions. *See Hamdan v. Rumsfeld*, 126 S. Ct. 2749 (2006). For the United States Government to remove Petitioner al Yazidi to a country that would afford no such protections would flout the Supreme Court's rulings and defeat jurisdiction over Petitioner. Such a transfer would also violate basic international legal norms embodied in the Geneva Conventions, the International Covenant on Civil and Political Rights, and the Convention Against Torture and Other Cruel and Degrading Treatment and Punishment.

Finally, public policy favors requiring Respondents to provide advance notice to counsel and the Court of any intended removal of Petitioner from the Court's jurisdiction. The public good requires that a federal litigant—properly before the Court and represented by counsel—be provided with a meaningful opportunity to contest his transfer into the hands of those who might torture him or detain him indefinitely. The relief Petitioner requests will not impede Respondents' efforts to transfer Petitioner to an appropriate location. In cases where a prisoner is being

transferred to an acceptable location, alternative agreements have been negotiated to accelerate the 30-day period. Petitioner al Yazidi only requests this order to provide a means of seeking relief from this Court before he is transferred to a place where he might be tortured or further held without process.

## II.   Conclusion

For the foregoing reasons, this Court should grant Petitioner al Yazidi's motion for 30 days' notice of intended transfer of Petitioner from Guantanamo Bay Naval Base in Cuba.

Dated: December 18, 2007.                    Respectfully submitted,

Counsel for Petitioner:

*/s/ Brent N. Rushforth*

Brent N. Rushforth, DC Bar No. 331074
Kit A. Pierson, DC Bar No. 398123
Sarah B. Pojanowski, DC Bar No. 502036
Jenny L. Workman, DC Bar No. 502584
Elizabeth S. Arora
Janet E. Haws
HELLER EHRMAN LLP
1717 Rhode Island Avenue, NW
Washington, DC 20036
Tel: (202) 912-2000
Fax: (202) 912-2020

Shayana Kadidal (DC 49512)
Pardiss Kebriaei (DC 51395)
CENTER FOR CONSTITUTIONAL RIGHTS
66 Broadway, 7th Floor
New York, New York 10012
Tel: (212) 614-6439
Fax: (212) 614-6499

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **RIDAH BIN SALEH AL YAZIDI,** | ) |
| **SAMI AL HAJJ,** as Next Friend of Mr. al Yazidi, | ) |
| *Petitioners/Plaintiffs,* v. | ) CIVIL ACTION NO. _____ |
| **GEORGE W. BUSH,** *et al.,* | ) |
| *Respondents.* | ) |

**CERTIFICATE OF SERVICE**

I hereby certify that, on this 18th day of December, 2007, I caused a true and correct copy of the **MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION REQUIRING RESPONDENTS TO PROVIDE COUNSEL FOR PETITIONER AND THE COURT WITH THIRTY DAYS' ADVANCE NOTICE OF INTENDED REMOVAL OF PETITIONER FROM GUANTANAMO** to be served on the following persons via First-Class, Postage Prepaid U.S. Mail:

**Kenneth L. Wainstein**
U.S. ATTORNEY
District of Columbia District
Judiciary Center
555 4th Street, NW
Washington, D.C. 20530

**George W. Bush**
PRESIDENT, UNITED STATES OF AMERICA
The White House
1600 Pennsylvania Avenue, NW
Washington, D.C. 20301-1000

**Michael B. Mukasey**
ATTORNEY GENERAL OF THE UNITED STATES
U.S. Department of Justice
Robert F. Kennedy Building
Tenth Street & Constitution Ave., NW
Room 5111
Washington, D.C. 20530

**Robert M. Gates**
SECRETARY, U.S. DEP'T. OF DEFENSE
1000 Defense Pentagon
Washington, D.C. 20301-1000

| | |
|---|---|
| **Rear Admiral Mark H. Buzby**<br>COMMANDER, JOINT TASK FORCE-GTMO<br>JTF-GTMO<br>APO AE 09360 | **Rear Admiral Mark H. Buzby**<br>UNITED STATES NAVY<br>Navy Pentagon<br>Washington, D.C.  20350-0200 |
| **Army Col. Bruce Vargo**<br>COMMANDER, JDOG<br>JTF-GTMO<br>APO AE 09360 | **Army Col. Bruce Vargo**<br>UNITED STATES ARMY<br>Army Pentagon<br>Washington, D.C.  20310-0200 |

_____
Deborah Raichelson
Heller Ehrman