IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **RIDAH BIN SALEH AL YAZIDI, et al.,**<br><br>　　　　　　Petitioners/Plaintiffs,<br><br>v.<br><br>**GEORGE W. BUSH, et al.**,<br><br>　　　　　　Respondents/Defendants. | CIVIL ACTION NO. 07-CV-02337 (HHK) |

**PETITIONER'S REPLY TO RESPONDENTS' OPPOSITION TO MOTION TO RECONSIDER AND VACATE FEBURARY 5, 2008 ORDER**

　　　　Petitioner, Ridah Bin Saleh al Yazidi ("Petitioner Yazidi"), respectfully requests that the Court reconsider and vacate its February 5, 2008, Order denying Petitioner Yazidi's Amended Emergency Motion to Enter the November 8, 2004 Amended Protective Order From *In Re Guantanamo Bay Detainees Cases* ("Motion to Enter Protective Order"). Petitioner Yazidi further asks the Court to enter the amended November 8, 2004, protective order from *In re Guantanamo Bay Detainee Cases* (the "*habeas* protective order"), so that Petitioner and his counsel can meet, converse, and correspond regarding this *habeas corpus* case.

　　　　As explained in his Motion to Reconsider, Petitioner Yazidi believes this Court's denial of his Motion to Enter the Protective Order resulted from an error of misunderstanding, apprehension, or oversight, making it a proper subject for

reconsideration. Petitioner's Motion to Reconsider and Vacate February 5, 2008 Order at 2-3, *Yazidi v. Bush*, No. 07-cv-2337 (HKK) (D.D.C. Mar. 31, 2008).

Respondents' assertion that "entry of a proper protective order in petitioner['s] parallel DTA case[] obviate[s] any need for entry of a protective order in th[is] case[]" reflects a fundamental misunderstanding about the nature of the DTA protective order. Respondents' Consolidated Opposition to Petitioners' Motions to Reconsider and Vacate February 5, 2008 Orders ("Respondents' Opposition") at 5, *Yazidi*, No. 07-cv-2337 (Apr. 14, 2008). Petitioner Yazidi does have a Detainee Treatment Act ("DTA") case pending before the D.C. Circuit, in which the protective order crafted to govern DTA cases (the "*Bismullah* protective order") was recently entered. Order, *Yazidi v. Gates*, No. 07-1522 (D.C. Cir. Apr. 22, 2008). But Respondents fail to recognize that however "proper" the *Bismullah* protective order may be for the narrow review authorized by the DTA, it was never intended to govern *habeas corpus* cases.[1] In fact, the *Bismullah* protective order would bar Petitioner from fairly developing this *habeas corpus* case, and inexplicably would condition Petitioner's pursuit of this case on unrelated activities before the D.C. Circuit.

---

[1] Although Respondents conflate the two proceedings, review by the D.C. Circuit pursuant to the DTA is completely divorced from, and dramatically narrower than, *habeas corpus* review in this Court. This point has been elaborated in a number of contexts, including in Petitioner's *habeas corpus* petition, Petition for a Writ of *Habeas Corpus*, *Yazidi*, No. 07-cv-2337 (Dec 31, 2007), and before the Supreme Court in *Boumediene v. Bush*, 476 F.3d 981 (D.C. Cir. 2007), *cert. granted*, 127 S. Ct. 3078 (2007), argued Dec. 5, 2007 (No. 06-1195).

To give just two examples:  <u>First</u>, the *Bismullah* protective order bars Petitioner Yazidi from exchanging legal mail with counsel regarding any events taking place after Petitioner's Combatant Status Review Tribunal ("CSRT"), which occurred on or about September 30, 2004.[2]  Thus, legal mail could not include:

- any discussion of the "Annual Review Boards," which purport to justify Petitioner Yazidi's continued captivity, or of their relationship to his *habeas corpus* claims;

- discussion of any evidence from before Petitioner Yazidi's arrest or from the forty-two months since his CSRT, including evidence proving Petitioner Yazidi's innocence, unless such evidence addressed "events leading up to [his] capture";[3]

---

[2] Under the *Bismullah* protective order:

"Legal Mail" consists only of documents and drafts of documents that are intended for filing in [the DTA] action and correspondence directly related to those documents that:

i. relate directly to the litigation of [the DTA] action; [and]

ii. address only (a) events leading up to the capture of the Detainee on whose behalf the petition…was filed; (b) events occurring between such Detainee's capture and any hearing before a Combatant Status Review Tribunal (CSRT) relating to such Detainee; and (c) the conduct of the CSRT proceeding relating to such Detainee[.]

Petitioner's Reply to Respondents' Opposition to Motion to Enter the Protective Order Ex. 1 at 4-5, *Yazidi*, No. 07-cv-2337 (Jan. 23, 2008).

[3] For example, suppose counsel discovered a witness whose testimony would exculpate Petitioner Yazidi, but the testimony did not address "events leading up to [Petitioner Yazidi's] capture."  Counsel could not write Petitioner Yazidi legal mail informing him of this development.  Similarly, if he knew of such a witness, Petitioner Yazidi could not send legal mail informing counsel and instructing them to locate the witness and present the exculpatory evidence on his behalf.

- any discussion of Petitioner Yazidi's treatment in captivity in the past three and one half years, including allegations of abuse or health concerns;

- any discussion of Petitioner Yazidi's potential transfer to a location where he might be tortured, abused, or denied due process of law, or how Petitioner Yazidi wishes counsel to proceed should they receive notice of such transfer pursuant to this Court's January 11, 2008, Order;

- <u>any mention of the very existence of this *habeas corpus* case</u>, because it is an event occurring after the CSRT, and arguably does not "relate directly to the litigation of [the DTA] action." *Bismullah's* definition of legal mail would not allow counsel to send Petitioner Yazidi a copy of his own *habeas corpus* petition, or any of the other pleadings or orders in this case.

Second, under the *Bismullah* protective order, Petitioner Yazidi would be entitled to only two meetings with his *habeas corpus* counsel unless he authorized them <u>to pursue Petitioner Yazidi's DTA case, a proceeding utterly divorced from this *habeas corpus* action</u>.[4]  Respondents fail to explain why Petitioner Yazidi's access to *habeas corpus* counsel should turn on his authorizing those same counsel to pursue his DTA case. Petitioner is entitled to forgo DTA representation altogether, or to select alternate counsel for the separate proceeding, without forfeiting his right to decide the terms of his representation before this Court.  Unlike the *Bismullah* order, the *habeas* protective order Petitioner Yazidi seeks was designed to govern *habeas corpus* cases, and appropriately requires Petitioner to authorize counsel for his *habeas corpus* proceeding.

---

[4] Respondents mischaracterize the *habeas* protective order as "contain[ing] the same limitation" on subsequent client meetings as the *Bismullah* protective order, "only in slightly different words." *See* Respondents' Opposition at 6-7.  Under the *Bismullah* protective order, Petitioner Yazidi must authorize counsel "to seek review of the CSRT's determination of his status" in a DTA proceeding before the Circuit Court. *Id.* at 7.  The *habeas* protective order requires "authori[zation] to represent the detainee" in his *habeas corpus* case before this Court – a totally independent proceeding. *Id.*  These requirements simply are not "the same."

4

By muddling the distinct DTA and *habeas* proceedings, Respondents attempt by sleight of hand to dissuade this Court from adopting the protective order appropriate to this proceeding. *See* Respondents' Opposition at 5-6, (alleging "the inherent unsoundness of petitioners' invitation to this Court to sit in judgment of the adequacy of a protective order that a three-judge panel of our Court of Appeals adopted following substantial briefing and argument"). Respondents fail to recognize that the D.C. Circuit in *Bismullah* addressed the protective order appropriate <u>for DTA claims</u>. Such a decision has no bearing on Petitioner's *habeas corpus* case. Indeed, it is this Court, and not the Court of Appeals, which has jurisdiction in the first instance over *habeas corpus* petitions. *See* Petition at 3, *Yazidi*, 07-cv-2337 (Dec. 31, 2007). Because the D.C. Circuit has never addressed what protective order should govern a Guantanamo Bay prisoner's *habeas corpus* case, this Court should follow the precedent it and the other District Courts have established and enter the *In re Guantanamo Bay Detainee Cases* protective order. *See, e.g.,* Order Entering Am. Protective Order, *Hentif v. Bush*, Civ. No. 06-1766 (HHK) (D.D.C. Nov. 21, 2006).

Finally, Respondents reiterate their position that this Court lacks jurisdiction to hear this case under the D.C. Circuit's *Boumediene* decision, 476 F.3d 981, notwithstanding both the Circuit's recall of its mandate and this Court's established contradictory practice. Order, *Boumediene*, No. 05-5062 (D.C. Cir. July 26, 2007). As this Court evidently recognizes, the Supreme Court remains the final arbiter of this Court's jurisdiction, and will resolve the question when it decides *Boumediene*, now under review. The status quo, allowing Guantanamo prisoners to meet and correspond

with their *habeas corpus* counsel, should be maintained in the interim.  Accordingly, this Court and its fellow District Courts have continued to exercise jurisdiction over Petitioner Yazidi's and other Guantanamo prisoners' *habeas corpus* cases pending a Supreme Court ruling in *Boumediene*.  *See, e.g.,* Order, *Yazidi*, 07-cv-2337 (Jan. 11, 2008) (granting one of Petitioner Yazidi's substantive motions in this case); Order, *Abulayev v. Bush*, No. 05-2389 (RBW) (Mar. 19, 2008) (granting a similar motion in another Guantanamo *habeas corpus* case, just one month ago).

In sum, Petitioner Yazidi respectfully asks the Court to reconsider and vacate its February 5, 2008, Order, and to enter in this case the protective order tailored for *habeas corpus* proceedings:  the November 8, 2004, order from *In re Guantanamo Bay Detainee Cases*.  Although Respondents deride differences between this protective order and the *Bismullah* protective order as mere "quibbles," their vigorous opposition to the instant motion belies such characterization.  If the differences were immaterial, Respondents should be equally satisfied with either protective order.  The *In re Guantanamo Bay Detainee Cases* protective order adopted in other *habeas* cases, not some order crafted for DTA proceedings, is appropriate in this *habeas corpus* action.

Dated:  April 24, 2008            Respectfully submitted,

                                  Counsel for Petitioner:

                                  ___/s/ Brent N. Rushforth_____
                                  Brent N. Rushforth (DC 331074)
                                  Kit A. Pierson (DC 398123)
                                  Sarah B. Pojanowski (DC 502036)
                                  Elizabeth S. Arora

Janet E. Haws
**HELLER EHRMAN LLP**
1717 Rhode Island Avenue, NW
Washington, DC 20036
Tel: (202) 912-2000
Fax: (202) 912-2020


Shayana Kadidal (DC 49512)
Pardiss Kebriaei (DC 51395)
**CENTER FOR CONSTITUTIONAL RIGHTS**
666 Broadway, 7th Floor
New York, New York 10012
Tel: (212) 614-6439
Fax: (212) 614-6499

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **RIDAH BIN SALEH AL YAZIDI, et al.,**<br><br>　　　　　Petitioners/Plaintiffs,<br>　v.<br><br>**GEORGE W. BUSH, et al.**,<br><br>　　　　　Respondents/Defendants. | **CIVIL ACTION NO. 07-CV-02337 (HHK)** |

## CERTIFICATE OF SERVICE

I hereby certify that, on this 24th day of April, 2008, I caused a true and correct copy of the **PETITIONER'S REPLY TO RESPONDENTS' OPPOSITION TO MOTION TO RECONSIDER AND VACATE FEBRUARY 5, 2008 ORDER** to be served on by the ECF system:


TERRY M. HENRY
ANDREW WARDEN
JUDRY SUBAR

United States Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Ave., N.W.
Washington, DC 20530
Tel: (202) 514-4107
Fax: (202) 616-8470
Counsel for Respondents

　　　　　　　　　　　　　　　　　　　　　　　　　　*/s/ Brent N. Rushforth*